Holland et al. *v.* Hand, Appellant.

Argued December 5, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Isador Pepp,* of *Ramsay & Pepp,* for appellant.

*Earle Hepburn,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1935:

Mary S. Holland died April 12, 1932, a widow, intestate, and leaving to survive her, as her next of kin and heirs at law, her four children, three of whom are plaintiffs in the bill in equity in this case, and the fourth is the defendant therein. At the time of her death she owned in fee No. 4227 Baltimore Avenue in the City of Philadelphia, particularly described in the bill. The decree, from which this appeal is taken, required defendant to specifically comply with a "Family Settlement" entered into by plaintiffs and defendant, by which the latter agreed, inter alia, to purchase the three-fourths interest of the former in the Baltimore Avenue property for $4,500, $3,500 thereof to be paid in cash, and the balance of $1,000 by a purchase-money mortgage in that sum. Defendant appeals. The decree is right and must be affirmed.

Defendant had lived with her mother in the property for some time, and, after the mother's death, claimed that the estate was indebted to her for services rendered to the mother, during that time. This plaintiffs denied. The mother had also opened two accounts in the Philadelphia Saving Fund Society, one in her name in trust for defendant, and the other in her name in trust for defendant's daughter. Decedent had also purchased certain bonds, taking title in the same way. These accounts and bonds plaintiffs claimed belong to decedent's estate, notwithstanding the way the title thereto appeared, but defendant and her daughter denied this. Upon petition duly filed by the administrator of decedent's estate, the orphans' court, at the suggestion of plaintiffs, enjoined the payment of these accounts and bonds to defendant

and her daughter, pending a judicial determination of the rights of the respective parties thereto.

While matters were in this shape, the parties and their counsel met, and the former, with the approval of the latter, entered into a verbal agreement for a family settlement of their disputes. This agreement was afterwards reduced to writing. By it, plaintiffs agreed to release all claims upon the saving fund accounts and upon the bonds, and that defendant should not be debarred from presenting her claim for payment for the alleged personal services to decedent, at the time of the filing and audit of the administrator's account, and she, the defendant, agreed to purchase plaintiffs' interest in 4272 Baltimore Avenue upon the terms above set forth.

When the family settlement was reduced to writing, eight copies thereof were made, one for each of the four parties and one for each of their counsel. One or more of them were promptly executed and delivered by two of the plaintiffs and by defendant. Under the pretense that he desired to explain the agreement to defendant, her counsel obtained the copies signed by her, promising to return them by noon of the next day. What he and his client intended to do, and what they in fact did, was to cross out the signatures of defendant on each copy signed by her, and of her counsel as a witness thereto, and to write across those signatures the words "Signature cancelled." In that condition they were returned several days later, upon demand by the counsel from whom they were obtained. Shortly afterwards, the third plaintiff executed the agreements.

Great stress is laid by defendant on the fact that she had cancelled her signature, especially as this was done before the last of the plaintiffs had signed the agreement. But neither of these matters are of any moment. The oral agreement to which all the parties assented, was, aside from the statute of frauds, valid and binding from the time the minds of all of them assented to it, even though it was contemplated, but not made a term of the

contract, that a written document, embodying the same terms, was afterwards to be drawn and executed by them: Schermer v. Wilmart, 282 Pa. 55; Taylor v. Stanley Co. of America, 305 Pa. 546; Ketchum v. Conneaut Lake Co., 309 Pa. 224. The only purpose of the writing was to comply with the requirement of the statute of frauds so far as the grantors were concerned. This was fully effectuated upon plaintiffs signing and delivering the agreements, and was not affected when defendant subsequently borrowed them and cancelled her signature. A knowledge of this probably explains why that statute is not invoked by her on this appeal.

In an endeavor to carry out the agreement set forth in the family settlement plaintiffs prepared and executed a paper agreeing to the vacation of the injunction proceedings which prevented appellant and her daughter from obtaining the money in the Philadelphia Saving Fund Society; a duly executed deed conveying their interest in the Baltimore Avenue property to defendant; and a mortgage of $1,000 thereon in their favor, to be executed by her; applied to the Colonial Trust Company, a title insurance company of good standing in the City of Philadelphia, for title insurance of the property; and notified defendant of a time and place fixed for the purpose of effecting the settlement. At that time and place a representative of the title insurance company, and all the plaintiffs or their counsel appeared, with the papers above referred to; and defendant's counsel also appeared, but she did not. At first, he simply said that defendant had changed her mind and would not carry out the agreement. No other reason was then given for her refusal so to do. When, however, the settlement certificate of the trust company was produced and he saw thereon, as an exception, a statement to the effect that the lien of decedent's (Mrs. Holland's) debts not of record were not insured against, he added that as an additional reason for not proceeding. The reason for the insertion of the exception was

that Mrs. Holland had died April 12, 1932, the date of
the meeting was March 2, 1933, and the lien of her debts,
not of record, would not expire until one year after her
death: section 15, Act June 7, 1917, P. L. 447, 476.
Plaintiffs thereupon agreed to leave the $4,500 they
were to receive from defendant in the hands of the trust
company, until the year had expired, in which event,
the trust company agreed that they would strike out
the foregoing exception from their settlement certifi-
cate. There was no outstanding claim against decedent's
estate, except that of defendant as above stated. De-
fendant's attorney said he knew this was so, but that
before the year would expire he intended to file a claim,
in favor of defendant, in an amount equal to the value
of the Baltimore Avenue real estate, for the services
claimed to have been rendered by her to decedent, so
as to create such a lien and prevent plaintiffs from
giving to defendant a good and marketable title to the
property. Defendant's counsel then left the place of
meeting without agreeing to or in fact doing anything
in the way of settlement. Plaintiffs thereupon deposited
with the representative of the trust company, the deed
executed by them, the mortgage to be executed by de-
fendant and the paper agreeing to the vacation of the
injunction proceedings which prevented defendant and
her daughter from obtaining the money on deposit in
the Philadelphia Saving Fund Society,—the deed and
vacation agreement to be delivered to defendant in case
she executed and delivered the mortgage and paid the
$3,500, in accordance with the terms of the family set-
tlement. She never did this, but four days before the
expiration of the year from decedent's death, brought
suit in the court of common pleas to recover for her
alleged services to decedent. This was a vain and use-
less gesture. When she executed and delivered the fam-
ily settlement, which was intended to end all the family
controversies, she knew she had this alleged claim, the
lien of which, under proper circumstances, might be

continued if suit was brought thereon within one year after her mother's death, yet she did not reserve therein the right to bring such a suit. All that she contracted for, and all that plaintiffs agreed she should have, was the right to have her "alleged claim . . . adjudicated by the Orphans' Court at the time of the filing and audit of the account." If there proved, she would obtain payment of her claim from the balance appearing in the administrator's account. This right she still has. No other claim but hers was ever made against decedent's estate and the time to effectively proceed thereon, if one had existed, in order to preserve its lien on decedent's realty, has long since expired.

It was stated in one of the briefs, but does not appear in the record, and hence cannot be utilized to sustain the decree below, that the paper withdrawing the injunction was obtained and so used by defendant as to enable her and her daughter to get the moneys in the saving fund, and that, by means thereof, they did get them. If this be so, defendant by this act estopped herself from refusing to carry out the terms of the family settlement. She cannot blow hot and blow cold at the same time; she cannot obtain and retain part of the consideration for the agreement, and yet refuse to comply with her part thereof.

Aside from this, however, for the reasons previously given, we affirm the decree of the court below which required her to carry out the terms of the family settlement, so far as concerns the property 4227 Baltimore Avenue within sixty days from the date of its decree, the time for compliance therewith being hereby extended, however, to thirty days from the filing of this opinion.

The decree of the court below, as above modified, is affirmed and the appeal is dismissed at the cost of appellant.